1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
8        NORTHERN DISTRICT OF CALIFORNIA
9

United States District Court
Northern District of California

| | |
|---|---|
| SHARON S. CHAND,<br><br>             Plaintiff,<br><br>     v.<br><br>MICHAEL S. REGAN,<br><br>             Defendant. | Case No.  21-cv-07773-RS<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Sharon Chand brings a pro se disability discrimination suit against Defendant Michael S. Regan, Administrator of the Environmental Protection Agency ("EPA"), her former employer. The suit raises five claims for relief: disparate treatment, retaliation, hostile work environment, failure to accommodate, and ADA interference. After two motions to dismiss and two amendments to Chand's complaint, Defendant now moves for summary judgment on all claims. For the reasons below, the motion is granted as to Chand's claims of disability discrimination, retaliation, and ADA interference, denied as to the claim of hostile work environment, and denied in part and granted in part as to the claim for failure to accommodate.

## II. BACKGROUND

The full factual background is set out in greater detail in the prior orders on Defendant's motions to dismiss. *See* Dkt. No. 27, at 2–3; Dkt. No. 46, at 2. Briefly, Plaintiff was employed by the EPA's Office of Civil Rights ("OCR") from September 2013 to September 2015, under an Excepted Service Appointment in accordance with 5 C.F.R. § 213.310(u), also known as Schedule

A hiring. Under Section 231.310(u), persons with physical disabilities may be hired on a temporary basis. After a two-year probationary period, an agency may noncompetitively convert an employee to the competitive service if their performance has been satisfactory. Plaintiff has several medical conditions, including deep vein thrombosis ("DVT"), inflammation, and major depressive disorder, that rendered her disabled before and during her employment.

Plaintiff requested and received several accommodations for her disability. Notably, EPA granted Plaintiff a flexible start time to account for mobility issues resulting from her DVT. Under this accommodation, Plaintiff could start work up to an hour after her standard start time, adjusting her end time accordingly.[1] Under this accommodation, Plaintiff was required to e-mail the office if she would arrive to the office later than her standard start time, but within the hour-long flexible start window. If Plaintiff would arrive after the one-hour window, she was required to call her supervisor Gina Edwards or, in Edwards's absence, Edwards's supervisor (and Plaintiff's second line supervisor), Alexis Strauss. She was also required to take leave in such cases.

Plaintiff avers Edwards denied various requests for accommodation of Plaintiff's disabilities. At issue are some of Chand's further requests for modification of her hours and her request for a chair at a World AIDS Day Event hosted by EPA. Chand also alleges Edwards created a hostile work environment. Plaintiff first reported these violations to EPA human resources staff in October 2014. In February 2015, Plaintiff filed a formal complaint against Edwards. Defendant initiated an investigation and reassigned Plaintiff to a new supervisor, Carolyn Truong. Defendant also moved Plaintiff to a new floor, closer to Truong and away from Edwards.

In June 2015, Plaintiff began taking leave under the Family and Medical Leave Act ("FMLA"). On September 18, 2015, the last day of her two-year probationary employment period

---

[1] Plaintiff's standard work schedule was initially 8:30 am to 5:00 pm with a 30-minute lunch, but this schedule later changed to 8:00 am to 4:30 pm. In September 2014, EPA, at Plaintiff's request, reverted her standard schedule to 8:30 am to 5:00 pm. For the remainder of her employment, Plaintiff's standard work hours were 8:30 am to 5:00 pm with a 30-minute lunch and her one-hour flexible start time accommodation.

United States District Court
Northern District of California

1    and two weeks after her FMLA leave was extended, Plaintiff was terminated. She filed a formal

2    complaint with the EPA's Office of Civil Rights in December of 2015 and the Equal Employment

3    Opportunity Commission ("EEOC") granted her a Notice of Right to Sue on July 7, 2021. This

4    suit followed. Plaintiff has twice amended her complaint. Her Second Amended Complaint

5    ("SAC") invokes the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., and the

6    Rehabilitation Act, 29 U.S.C. § 791, to present five claims for relief: (1) disability discrimination

7    based on disparate treatment, (2) retaliation (3) hostile work environment, (4) disability

8    discrimination based on failure to provide reasonable accommodation, and (5) ADA interference.

9    Defendant moves for summary judgment on all claims.

10    ### III. LEGAL STANDARD

11    Summary judgment is proper "if the movant shows that there is no genuine dispute as to

12    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

13    The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or

14    defenses." *Celotex v. Catrett,* 477 U.S. 317, 323–24 (1986). The moving party "always bears the

15    initial responsibility of informing the district court of the basis for its motion, and identifying

16    those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

17    together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

18    material fact." *Id.* at 323 (quotation marks omitted).

19    After the moving party meets its burden, the nonmoving party must bring forth material

20    facts, or "facts that might affect the outcome of the suit under the governing law" to preclude the

21    entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial

22    court must "draw all justifiable inferences in favor of the nonmoving party, including questions of

23    credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Mag.,*

24    *Inc.*, 501 U.S. 496, 520 (1991). However, "[t]he mere existence of a scintilla of evidence in

25    support of the plaintiff's position" is insufficient to defeat a motion for summary

26    judgment. *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational

27    trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec.*

28

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Pro se litigants are subject to the same rules at summary judgment as those represented by counsel. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). If the moving party meets its burden and the nonmoving party fails to raise a genuine question of material fact, then the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322–23.

## IV. DISCUSSION

### A.  Disability Discrimination

The Rehabilitation Act allows federal employees to seek recourse for employment discrimination based on disability. *Boyd v. United States Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985). The Rehabilitation Act, though limited to federally funded programs, is otherwise "materially identical to and the model for the ADA." *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (quoting *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013)). Accordingly, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act" and courts routinely look to Rehabilitation Act caselaw to interpret rights and obligations under the ADA, and vice versa. *Zukle v. Regents of U. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

"Discrimination and retaliation claims under the ADA are both subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*." *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (citing 411 U.S. 792, 802–04 (1973)). Under the *McDonnell Douglas* framework, employees averring discrimination have "the initial burden of establishing a prima facie case of discrimination (or retaliation)." *Id.* at 632. If the employee establishes her prima facie case, the employer bears the burden of "provid[ing] a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action." *Id.* "If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Id.*

To state a prima facie case for disparate treatment under the Rehabilitation Act, "a plaintiff

United States District Court
Northern District of California

must demonstrate (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (superseded by statute on other grounds). A plaintiff must also show her disability was a but-for cause of the employment action alleged to be discriminatory. *See* 29 U.S.C § 791(f) (explaining Section 501 claims are decided using the same standard as Title I of the ADA); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) ("[A]n ADA discrimination plaintiff bringing a claim under 42 U.S.C. § 12112 must show that the adverse employment action would not have occurred but for the disability.").

Parties acknowledge Ms. Chand is a person with a disability who was otherwise qualified for employment. Plaintiff contends her termination was an adverse employment action motivated by her disability. Ms. Chand has established a prima facie case for discrimination, and therefore the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for its termination of Chand.

### 1. Defendant's Nondiscriminatory Reason

Defendant avers Plaintiff was terminated because of her performance, rather than her disability. Strauss, the ultimate decision-maker on whether to convert or terminate Plaintiff, relied on Chand's supervisor Edwards's recommendation, in addition to Strauss's personal knowledge of issues with Chand's work. Plaintiff's performance is a legitimate, non-discriminatory reason to terminate her after the probationary period. Chand avers Defendant's cited performance problems stem from her exercise of her flexible start time, a reasonable accommodation based on her disability. However, Defendant has adequately demonstrated the performance problems stemmed from Chand's inability to "take on multiple projects and higher-level responsibilities and perform her assignments with the independence and expectations normally required." Dkt. No. 74, Ex. FF, at 1. The necessity of "writing reports, compiling data, and completing projects and providing deliverables with accuracy and in a timely fashion," at the "heart of [Defendant's] work," does not implicate Plaintiff's reasonable accommodation or disability. *Id.* Defendant has proffered a legitimate, nondiscriminatory reason for Chand's termination, thus shifting the burden of

1   production back to Plaintiff.

2       **2. Pretext**

3       Chand is unable to establish a question of material fact as to pretext. A plaintiff can

4   demonstrate pretext through either direct or circumstantial evidence. *See Coghlan v. Am. Seafoods*

5   *Co. LLC.*, 413 F.3d 1090, 1095–96 (9th Cir. 2005). Chand has presented no direct evidence of bias

6   on the part of either Strauss or Edwards. *See id.* at 1095 ("Direct evidence typically consists of

7   clearly sexist, racist, or similarly discriminatory statements or actions by the employer." (citations

8   omitted)). Therefore, she must provide "specific and substantial" circumstantial evidence of

9   discrimination. *Id.* at 1096. A plaintiff can make an affirmative case that the employer is biased or

10  a negative case by showing the employer's proffered explanation for the adverse action is

11  "unworthy of credence." *Id.* at 1095 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S.

12  248, 256 (1981)).

13      Viewing the record in the light most favorable to Plaintiff, Chand has not produced

14  evidence demonstrating that a discriminatory reason "more likely than not motivated the

15  [D]efendant." *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007). Plaintiff has not offered

16  even circumstantial evidence that Strauss was biased against Chand. She therefore tries to cast

17  doubt on Defendant's proffered explanation.

18      Chand primarily argues performance is a pretextual reason for her termination because she

19  was "fully successful" in her role and therefore any evidence Defendant puts forward regarding

20  her performance is contradictory. SAC ¶ 63. However, Defendant has adequately shown a "fully

21  successful" rating does not automatically entitle Plaintiff to conversion under Schedule A. The

22  termination letter from Strauss informs Chand that although "you performed your appointment

23  with a 'Fully Successful' performance rating, the Agency decided not to retain you beyond your

24  trial period." Dkt. No. 74, Ex. C. Strauss's communications reflect the text of the Schedule A

25  regulation, which give an agency discretion to convert noncompetitively an employee after a

26  satisfactory two years of service. *See* C.F.R. § 213.3102(u)(6)(i). Edwards's memo, which Strauss

27  relied on in part in terminating Chand, acknowledges this discretion and recommends Chand be

28

United States District Court
Northern District of California

1    terminated at the end of her probationary period because she did not meet the discretionary

2    standard for conversion, despite her satisfactory performance in the probationary role.

3    Moreover, "[an] employer does not have to be correct about their proffered justification for

4    firing; the employer need only have an honest belief about the reason for the decision." *Villiarimo*

5    *v. Aloha Island Air, Inc*., 281 F.3d 1054, 1063 (9th Cir. 2002). Chand does not offer "specific and

6    substantial" circumstantial evidence that Strauss did not believe Chand's performance was

7    grounds for termination. Chand points to evidence Edwards did not believe Chand's performance

8    was deficient, or that Edwards was biased against Chand. However, Strauss was the final decision

9    maker and based Chand's termination, at least in part, on Strauss's independent knowledge of

10   Chand's performance issues. Plaintiff's evidence of Edwards's potential bias or lack of subjective

11   belief is unavailing.

12   Chand also argues Defendant has offered inconsistent reasons for her termination.

13   Specifically, she contends Defendant did not identify performance issues until after she filed her

14   EEO complaint. Shifting justifications can be circumstantial evidence that a proffered explanation

15   is unworthy of credence, but only if the reasons offered by an employer are incompatible. *See*

16   *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 (9th Cir.1997); *Culver v. Qwest Commc'ns.*

17   *Corp.*, 306 Fed. Appx. 403, 405 (9th Cir. 2009) (unpublished). Chand has not shown Defendant's

18   reasons were inconsistent. While the EPA may not have internally coded her termination as based

19   on performance, nor directly communicated that reason to Chand, these facts do not amount to

20   fundamentally different justifications. Defendant refused to exercise its discretion under Schedule

21   A to convert Chand to a full-time employee and relied at least in part on her performance in

22   making that decision. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661–62

23   (9th Cir. 2002), *as amended* (July 18, 2002) (finding seasonal downturn and performance were

24   different, but consistent, non-discriminatory reasons to terminate employee).

25   Finally, Plaintiff points to disputes over internal documents to prove pretext. Chand avers

26   the internal Report of Investigation (ROI) into Chand's claims against Edwards was provided to

27   Strauss in advance of Strauss's termination of Chand, despite Strauss's testimony otherwise. She

28

also claims Edwards failed to conduct a required 2015 mid-year review of Chand's performance. Finally, Chand argues Edwards falsified Chand's 2013-2014 PARS to misrepresent the distribution of responsibilities for Chand's role. These disputes cannot create a question of material fact as to pretext because they do not rebut Defendant's evidence of a nondiscriminatory reason to terminate Chand, particularly given Strauss's independent knowledge of Chand's performance issues. Therefore, the motion for summary judgment is granted as to Chand's claim of disability discrimination resulting in her termination.

**B. Retaliation**

To bring a retaliation claim, a plaintiff must show "(1) [she] engaged in a protected activity, (2) [her] employer subjected [her] to a materially adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2016 WL 946099, at *12 (N.D. Cal. Mar. 14, 2016) (citing *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013)). "Causation may be established by direct evidence or 'inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Id.* at *13 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)). "Causation will be inferred from timing alone only if the proximity is 'very close[,]' such that the 'adverse employment action follows on the heels of protected activity.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) and *Villiarimo*, 281 F.3d at 1065).

Chand asserts multiple instances of retaliation. First, she avers Defendant moved her to a new supervisor and desk in retaliation for her EEO complaint in February 2015. After the move, Chand claims Edwards continued to be present on Chand's new floor, "walking by Plaintiff's work area, laughing behind Plaintiff's back." SAC ¶ 187. Second, Chand contends the EPA's "sham" investigation was part of its retaliation against her, particularly the investigation's "unreasonable delay." SAC ¶ 190. Plaintiff also avers her request for telework was delayed "without reason." SAC ¶ 189. Finally, Plaintiff claims her termination was in retaliation for her

1   request to extend her leave into September 2015.

2       **1.   Retaliation for February 2015 Complaint**

3       Chand is unable to demonstrate she faced an adverse employment action because of her

4   February 2015 complaint against Edwards. Adverse employment actions are "employer

5   interference with 'unfettered access' to Title VII's remedial mechanisms," specifically "actions

6   that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and

7   their employers." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citing

8   *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)). Normally, "petty slights, minor annoyances, and

9   simple lack of good manners will not create such deterrence," as these do not materially affect the

10  "terms, conditions, or privileges" of a plaintiff's employment. *Id.*

11      The EPA moved Chand to another desk to improve her work environment. Chand

12  concedes her new location was closer to her temporary supervisor, Truong. Chand's discomfort

13  with Edwards's presence on the floor and her allegation that Edwards was "laughing behind

14  [Chand's] back" also do not rise to the standard of adverse employment actions. While the

15  relocation and Edwards's presence could, in certain contexts, amount to adverse employment

16  actions, Chand has made no showing beyond her complaint that these actions were beyond minor

17  annoyances or lack of good manners. *See White*, 548 U.S. at 68–69 (explaining the context, fact-

18  specific analysis necessary for evaluating an adverse employment action); *cf. Chuang v. Univ. of

19  Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1125–26 (9th Cir. 2000) (recognizing adverse action in

20  relocation of plaintiffs' laboratory space on university campus where the plaintiff demonstrated

21  the harm to his career done by the relocation).

22      Chand has also failed to establish the "delays" of the investigation into Edwards and

23  Chand's telework request were adverse employment actions. *See Burlington,* 548 U.S. at 68

24  (holding that even though a plaintiff has a lower burden to establish an adverse employment action

25  within a retaliation claim compared to a discrimination claim, plaintiff must at least show that the

26  alleged retaliatory act "might well have dissuaded a reasonable worker from making or supporting

27  a charge of discrimination"). The adverse employment action need not be severe but must have

28  some effect on a reasonable employee. *See Blount v. Morgan Stanley Smith Barney LLC*, 982 F.

United States District Court
Northern District of California

ORDER ON MOTION FOR SUMMARY JUDGMENT
CASE NO. 21-cv-07773-RS

9

Supp. 2d 1077, 1086 (N.D. Cal. 2013), *aff'd,* 624 Fed. Appx. 965 (9th Cir. 2015) (unpublished) (relying on *McAlindin v. Cnty. of San Diego,* 192 F.3d 1226, 1239 (9th Cir. 1999) and *Bouman v. Block,* 940 F.2d 1211, 1229 (9th Cir.1991)). The EPA promptly investigated and took remedial action after Chand's complaint, even if it took several months to reach a conclusion. Chand has not made any showing or cited to any case holding seven months to conclude an investigation is an unreasonable delay that would discourage a reasonable employee from reporting. Additionally, Chand has not demonstrated she made any formal request to telework. Without any further evidence of harm, a non-answer to an informal request, outside of the EPA's telework procedure, would not discourage a reasonable employee from taking protected action. Therefore, Chand has not established an adverse employment action in retaliation for her February 2015 complaint.

### 2. Retaliation for September 2015 Leave

Chand's termination was an adverse employment action, but her claim fails on the heightened but-for causation standard to make out a prima facie case of retaliation. "Retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (applying the but-for causation standard to retaliation in the disability discrimination context). Neither Strauss nor Edwards were involved with Chand's request for FMLA leave. Truong, her new supervisor, approved her FMLA leave and its extension. The temporal proximity of Chand's FMLA extension request could establish an interference that her leave was a motivating factor for the latter, but the temporal proximity is not enough to establish but-for causation. *See Wood v. Maricopa Cnty. Spec. Health Care Dist.*, 764 Fed. Appx. 579, 580 (9th Cir. 2019) (unpublished) (holding the same). Chand has provided no evidence that but for her request, reviewed and approved by Truong alone, she would not have been terminated by Strauss.

Even assuming Chand could show but-for causation, she would fail to meet her production burden under the *McDonnell-Douglas* framework for the same reasons as above. Defendant has established a legitimate, non-retaliatory reason for terminating Chand and Chand has not demonstrated pretext. Therefore, Defendant's motion for summary judgment is granted as to

1    Chand's entire claim of retaliation.

2        **C. Failure to Accommodate**

3        To establish a prima facie case of failure to accommodate under the Rehabilitation Act,

4    Chand must show (1) she is an individual who has a disability, (2) who is otherwise qualified for

5    employment, meaning that she could perform the essential functions of her position with or

6    without a reasonable accommodation, and (3) that Defendant refused reasonably to accommodate

7    her disability. *See Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993); *Blanchard v.*

8    *Lahood*, 461 F. App'x 542, 544 (9th Cir. 2011). Reasonable accommodations are "mechanisms to

9    remove barriers or provide assistance to disabled individuals so that they can perform the essential

10   functions of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001).

11       Chand claims that she was denied the following four accommodations:

12           1.  On 10/27/2014, Plaintiff was directed by Edwards to report to work 07:45AM even

13               though Plaintiff was approved to start work officially at 8:30AM as an

14               accommodation. SAC ¶152.

15           2.  On 10/30/2014, Edwards denied Plaintiff's request for a one-time consideration of

16               starting work earlier than 8:30AM to find disabled parking and telework. When

17               Plaintiff suggested an alternative of teleworking, another option available as a

18               reasonable accommodation, this too was denied by Edwards. SAC ¶ 153.

19           3.  On 11/21/2014, Plaintiff requested a chair in order to use her foot stool at a

20               Heritage Month event taking place on 12/01/2014. Plaintiff specifically referenced

21               her recent flare-ups. Plaintiff was bed-bound for several days and could not stand

22               for an extended period of time. Edwards refused to provide Plaintiff with a chair.

23               SAC ¶¶ 158–59.

24           4.  On 02/6/2015, Plaintiff met with Vicki Lane, Assistant Human Resources Officer,

25               and Johnson about FMLA. Johnson was the R9 lead for telework and discussed

26               telework, medical telework and other options with Plaintiff. Plaintiff identified the

27               need for medical/telework during the meeting with Johnson. Defendant delayed

28

Plaintiff's request for telework for (4) months until Plaintiff went out on medical
leave in June 2015. Telework was an option available to all Region 9 employees.
Plaintiff does not recall having access for telework as an accommodation provided
by Defendant. SAC ¶¶ 165–66.

Defendant is correct that Chand did not make a request for an accommodation on October
27, 2014, when she was directed to report to work by 7:45 am. The only evidence in the record is
Chand's email acquiescing to the request from her supervisor Edwards. Moreover, Defendants
have shown that Chand's start-time accommodation did not include special events she was
required to work. Therefore, this was not a denial of a reasonable accommodation.

However, Chand was denied her accommodation request related to October 30, 2014.
Defendant argues her request was "motivated by Plaintiff's own convenience and not any needs
arising from her disability." Dkt. No. 74, at 16. However, Chand's choice of transport is plausibly
related to her disability. Defendant argues Chand's general flexible start time sufficiently covered
such a need, thus obviating any further requirement that Defendant engage in an interactive
process to accommodate Chand. However, "[a]n employer's obligation to engage in the interactive
process extends beyond the first attempt at accommodation and continues when the employee asks
for a different accommodation or where the employer is aware that the initial accommodation is
failing and further accommodation is needed." *Humphrey v. Meml. Hosps. Ass'n*, 239 F.3d 1128,
1138 (9th Cir. 2001). Chand explained her need and why the initial accommodation would not
work for this particular day. Defendant's previous grant of a flexible start time did not obviate
their responsibility to engage with Chand regarding further accommodations, if necessary.
Therefore, this claim for denial of a reasonable accommodation presents a prima facie case.

Edwards also denied Chand a chair at the December 1, 2014 event. Defendant contests
whether Chand's presence at the event was an essential job function. Based on the record, a
reasonable factfinder could conclude that Chand's presence handing out ribbons, even if her
primary job was to solicit further volunteers, was also an essential function. Chand adequately
explained her need and her request was denied. Therefore, Chand presents a prima facie case for

failure to accommodate at the World AIDS Day Event.

Finally, Chand has shown that she requested an accommodation of telework. Although Defendant explains Chand did not meet the procedural requirements to request telework formally, Chand communicated this need well enough to establish her prima facie case. Viewing the record in the light most favorable to Chand, there remains a question of material fact as to whether Defendant failed to engage in the interactive process by not offering telework as a potential reasonable accommodation, even if Chand failed to request it formally. *See Humphrey,* 239 F.3d at 1138; *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1116–17 (9th Cir. 2000), *vacated sub nom. by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (ignoring a request for accommodation constituted failure to engage in the interactive process).[2] Therefore, Defendant's motion for summary judgment on Plaintiff's failure to accommodate claim is granted as to the October 27, 2014 incident, but denied as to the three other requests.

### D.  Hostile Work Environment

The Ninth Circuit recently "join[ed] the weight of consensus" in recognizing claims of a hostile work environment as cognizable under the Rehabilitation Act. *Mattioda*, 98 F.4th at 1174. The Ninth Circuit has not endorsed a particular test for hostile work environment claims, despite Defendant's reliance on a district court case that adopts the test from the Fifth Circuit. However, based on the reasoning in *Mattioda*, a hostile work environment claim under the ADA and Rehabilitation Act would likely mirror one brought under Title VII. *Id.* (endorsing other circuit courts' conclusion that the similarities between Title VII and the ADA allow for hostile work environment claims under the ADA); *Garity v. APWU Natl. Lab. Org.*, 655 Fed. Appx. 523, 524 (9th Cir. 2016) (unpublished) (assuming that if the Ninth Circuit were to recognize hostile work environment claims under the ADA, it would apply Title VII law to analyze them). Therefore,

---

[2] The Supreme Court granted certiorari and vacated the Ninth Circuit's en banc opinion on a different issue than the one of the employer's obligations to accommodate. "The Court of Appeals also correctly held that there was a triable issue of fact precluding the entry of summary judgment with respect to whether petitioner violated the statute by failing to engage in an interactive process concerning respondent's three proposed accommodations. This latter holding is untouched by the Court's opinion today." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 407 (2002) (Stevens, J., concurring) (citation omitted).

Chand's hostile work environment claim requires she demonstrate (1) she was subjected to harassing conduct related to her disability, (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *See Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 686 (9th Cir. 2017) (applying this test in the Title VII racial discrimination context); *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991) (applying this test in the Title VII gender discrimination context).

Courts will determine if the environment was sufficiently hostile or abusive by looking at all circumstances, including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Anello v. Berryhill*, No. 18-cv-00070-DMR, 2019 WL 285197, at \*11 (N.D. Cal. Jan. 22, 2019) (quoting *Farragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

Chand has established a question of material fact as to whether the averred harassment was related to her disability. Defendant correctly states "the Rehabilitation Act is not a civility code" and "poor communication skills and rudeness alone do not constitute harassment if not based on disability." Dkt. No. 74, at 18 (relying on *Young v. Nicholson*, No. CV-05-407-RHW, 2007 WL 128821, at \*13 (E.D. Wash. Jan. 12, 2007) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). However, Chand points to Edwards's restrictions, in the form of reprimands and increasingly elaborate procedures, on Chand's use of her flexible start time. A reasonable factfinder could conclude that these actions constituted harassing conduct based on Chand's disability because of their nexus with Chand's reasonable accommodation.

In multiple emails, Edwards characterized Chand's usage of her flexible start time as tardiness. While Defendant claims the criticisms of Plaintiff only occurred when Chand was late for personal reasons, Chand has adequately explained she needed to drive because of her disability. Edwards was aware of Chand's accommodation and her underlying disability. Despite this knowledge, Edwards repeatedly characterized Chand's arrival after her scheduled 8:30 a.m. start time – but within her flexible one hour start window – as tardy. *See, e.g.*, Dkt No. 74, Ex. Q (Chand emailing to notify Edwards that she arrived at 9:15 a.m., and Edwards responding with

concerns about Chand's "tardiness" and stating that Chand must "manage [her] commute to ensure that [she] arrive at [her] desk by [her] 8:30 am start time). Edwards also used language describing Chand's mode of transportation as one of personal preference, rather than related to her disability. Dkt. No. 74, Ex. K (Edwards describing Chand's "excessive amounts of tardiness" attributed to "outside factors" including "driving around the office looking for free parking"); Ex. A, at 75, 94 (Chand describing her need to find "disabled parking," not "free parking").

Edwards also imposed procedural barriers to Chand's exercise of her accommodation. Defendant alarmingly misstates the facts by contending "the procedures put in place for reporting late to work related to instances in which Plaintiff would arrive outside of her flexible start time." This is directly contradicted by the record. *See, e.g.*, Dkt. No. 74, Ex. D (Edwards emailing Chand that Chand has "up to 1 hour leeway in the mornings to start as late as 9:30 am, with a call letting us know of your anticipated delay"); Ex. G (Edwards emailing Chand that "due to circumstances related to your disability you can work as late as 9:30 am…but must contact the office…to communicate your delay in starting at 8:30 am, your anticipated arrival time"); Ex. H (Edwards approving an adjusted schedule for two weeks, and outside of that schedule, reminding Chand that she must call Edwards if Chand does not arrive by 8:00 a.m., with no exception in this procedure for Chand's flexible start time).

Defendant makes much of the fact that Edwards never made explicit statements disparaging Plaintiff's disability or accommodations, nor did Chand consistently explain to Edwards how her exercise of her flexible start was related to her disability. However, Edwards was aware of Chand's disability and accommodation. Edwards modified the procedures around Chand's use of her flexible start time accommodation multiple times over her nearly two years as Chand's supervisor. Therefore, Plaintiff has raised a genuine question of material fact as to whether Edwards reprimands and procedures had a sufficient nexus to Chand's reasonable accommodation and disability. At the summary judgment stage, the "evolving, multistep process" instituted by Edwards, paired with her emails scolding Chand for "tardiness" even when she arrived within the flexible start window could plausibly tie Edwards's conduct to Chand's disability. Dkt. No. 74, Ex. A, at 144.

United States District Court
Northern District of California

United States District Court
Northern District of California

The conduct at issue is sufficiently severe or pervasive to survive summary judgment. "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Mattioda*, 98 F.4th at 1175–76 (relying on *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005) (quotation marks omitted). "All the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" inform whether an environment is sufficiently hostile. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)) (quotation marks omitted). Teasing and isolated incidents or comments are generally insufficiently severe or pervasive. *Reynaga.*, 847 F.3d at 687; *see also Faragher*, 524 U.S. at 788 (explaining that harassment claims should not be based on "ordinary tribulations of the workplace" (citation omitted)). However, if "hostile conduct pollute[d] the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position," then the plaintiff faced severe or pervasive employer conduct. *Reynaga*, 847 F.3d at 687 (citation omitted). "In close cases…where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008).

Chand testifies Edwards "became more threatening, intimidating, not as accessible…[and the] majority of her communication was via e-mail." Dkt. No. 74, Ex. A, at 53. That communication "was abrupt, punitive, inflexible, and just became really unapproachable." *Id.* Chand reinforces her own deposition with Edwards's emails and Chand's concerns documented in her internal complaint against Edwards. Witnesses also confirm Edwards's "harsh and brusque" conduct towards Chand. Dkt. No. 16, Ex. C. While no single interaction was obviously serious, Chand has shown that these potentially smaller incidents occurred with frequency. This conduct, occurring over more than a year, exceeds isolated incidents. Because this is a close call, Chand has raised a question of severity more suited to a factfinder than a court at this stage.

Defendant argues Chand must additionally show Defendant knew or should have known about the harassment and failed to take prompt action to stop it. The Ninth Circuit has not

endorsed this additional requirement, and such a showing of vicarious liability is unnecessary when the averred harasser is a supervisor. *See, e.g.*, *Reynaga*, 847 F.3d at 689; *cf. Mattioda*, 98 F.4th at 1177 (finding that the district court erred in dismissing a plaintiff's claim for hostile work environment under the ADA when he plausibly alleged disability-related harassment, committed by his supervisor and rising to the level of severe or pervasive). Even assuming such a step is necessary for a hostile work environment claim under the Rehabilitation Act, Chand sufficiently alleges Defendant failed to act on her complaint of harassment. Although Plaintiff was moved to a new supervisor after her February 2015 complaint, a reasonable finder of fact could conclude that Defendant's failure to keep Edwards away from Chand even at Chand's new desk location constituted failure to remedy. Whether Defendant's investigation was sufficient is a question inappropriate for this stage. Therefore, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is denied.

### E.  ADA Interference

In the SAC, Chand raises a new claim of interference with her rights under the ADA. The anti-interference provision of the statute protects "the exercise or enjoyment of ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b) (emphasis added). "[I]t is clear that, given the broad remedial purpose of the ADA, the plain language of [the anti-interference provision] clearly prohibits a supervisor from threatening an individual with transfer, demotion, or forced retirement unless the individual foregoes a statutorily protected accommodation." *Brown v. City of Tucson*, 336 F.3d 1181, 1192–93 (9th Cir. 2003). As explained, the same analysis applies for claims brought under the Rehabilitation Act. *See Child v. San Bernardino Unified Sch. Dist.*, 35 Fed. Appx. 521, 523 (9th Cir. 2002) (unpublished) (locating plaintiff's right to sue in the anti-retaliation portions of both the ADA and the Rehabilitation Act, which makes it unlawful for an employer to intimidate or retaliate "for the purpose of interfering with any right"); *see also Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017) ("Put simply, Section 504 employment discrimination is controlled by the standards of the ADA and a claim for "interference" pursuant to Section 504 is established pursuant to the standards of the ADA.").

ORDER ON MOTION FOR SUMMARY JUDGMENT
CASE NO. 21-cv-07773-RS

United States District Court
Northern District of California

1

2

3

4

5

6

While recognizing that "conclusory allegations—without more—are insufficient to state a violation" of this provision, a plaintiff can demonstrate that she has suffered a "distinct and palpable injury" resulting from the threat. *Brown*, 336 F.3d at 1193. "That injury could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Id.* (relying on *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001), *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).

7

8

9

10

11

12

13

Defendant argues Chand has not made specific facts or allegations in association with an ADA interference claim, thus entitling Defendant to judgement as a matter of law. While Chand has, at other points, referenced facts potentially relevant to a claim of interference under the ADA and the Rehabilitation Act, she has failed to present any evidence in opposition to Defendant's motion for summary judgment. Therefore, she has failed to demonstrate there is a genuine dispute as to this claim. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). Defendant's motion for summary judgment is granted as to Plaintiff's claim of ADA interference.

14

## V. CONCLUSION

15

16

17

18

19

20

Defendant's motion for summary judgment is granted as to Plaintiff's claims of disability discrimination, retaliation, and ADA interference. The motion is also granted as to Plaintiff's claim of failure to accommodate her on October 27, 2014. Defendant's motion is denied as to Plaintiff's accommodation claims regarding an adjusted start on October 30, 2014, seating during the December 1, 2014 event, and telework. Defendant's motion is also denied as to Plaintiff's claim of hostile work environment.

21

22

A status conference is set for January 23, 2025. Parties should submit a status report by January 16, 2025.

23

24

**IT IS SO ORDERED**.

25

Dated: December 26, 2024

26

27

RICHARD SEEBORG
Chief United States District Judge

28